## UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOSEPH SAPONARO and GARY WEKSLER,<br><br>Plaintiffs,<br><br>-against-<br><br>CBCF II D, LLC, COLD BORE CAPITAL FUND III, L.P., COLD BORE CAPITAL GP III, LLC, and SERGIO ZEPEDA,<br><br>Defendants, | Civil Action No: 7:26-cv-108<br><br>**COMPLAINT** |

Plaintiffs Joseph Saponaro and Gary Weksler as and for their complaint against defendants, CBCF II D, LLC, Cold Bore Capital Fund III, L.P., Cold Bore Capital GP III, LLC and Sergio Zepeda, states as follows:

### THE PARTIES

1.      Joseph Saponaro ("***Saponaro***") is an individual residing in the State of Florida, County of Broward.

2.      Gary Weksler ("***Weksler***", referred together with Saponaro as "**Plaintiffs**") is an individual residing in the State of New York, County of Queens.

3.      Upon information and belief, CBCF II D, LLC ("***Borrower***"), is a foreign limited liability company organize and existing under the laws of the State of Delaware, with its principal place of business located at 311 S. Wacker Drive, Suite 4700, Chicago, Illinois 60606

4.      Upon information and belief, Cold Bore Capital Fund III, L.P. ("***Fund III***") is a foreign limited partnership organize and existing under the laws of the State of Delaware, with its principal place of business located at 311 S. Wacker Drive, Suite 4700, Chicago, Illinois 60606

5.      Upon information and belief, Cold Bore Capital GP III, LLC ("**GP**", referred together with Fund III as "***Fund Guarantors***") is a foreign limited liability company organize and existing under the laws of the State of Delaware, with its principal place of business located at 311 S. Wacker Drive, Suite 4700, Chicago, Illinois 60606

6.      Upon information and belief, and Sergio Zepeda ("***Individual Guarantor***", referred together with Fund Guarantor as "***Guarantors***") is a resident of the State of Illinois.

## JURISDICTION AND VENUE

7.      This Court has in personam jurisdiction over Defendants because they each expressly consented to the jurisdiction of this Court via forum selection clause in the promissory note and guarantee agreement at issue in this matter.

8.      Federal subject matter jurisdiction also exists under 28 U.S.C. §1332(a)(2) because complete diversity of citizenship exists among adverse parties, and the matter in controversy exceeds the sum of $75,000.00. More specifically:

   a.   Borrower and Fund Guarantors are each citizens, residents and domiciliary of the State of Delaware and the State of Illinois; and

   b.   Neither of the plaintiffs is a citizen, resident or domiciliary of Delaware or Illinois. Saponaro is a citizen, resident and domiciliary of the State of Florida. Weksler is a citizen, resident and domiciliary of the State of New York.

9.      Venue in this Court is proper because the promissory notes and guarantee provide for the jurisdiction of the State and Federal Courts located in the County and State of New York to resolve any disputes arising or relating to the agreement.

## FACTUAL ALLEGATIONS

10.     On or about August 21, 2024, Plaintiffs loaned Borrower the sum of $4,000,000 (the "***Loan***"). The Loan was memorialized in a secured promissory note (the "***Note***").

2

11.    The Note, which had a maturity date of December 31, 2024 ("***Maturity Date***"), provided varying interest rates as follows:

    a.    15% - payment, prepayment or repayment on or before October 20, 2024;

    b.    25% - payment, prepayment or repayment after October 20, 2024, but on or before November 20, 2024; and

    c.    50% - after November 20, 2024[1].

12.    In addition, the Note provided for a default interest rate of five percent (5%) per annum.

13.    The Note further provided that in the event Borrower failed to pay all outstanding obligations under the Note on or prior to the Maturity Date, the principal amount due shall automatically increase by $1,000,000 on January 1, 2025, and by and additional $1,000,000 on the 20th day of each month thereafter.

14.    Pursuant to Section VIII(d) of the Note, plaintiffs are entitled to attorney's fees in enforce their rights under the Note.

15.    As additional consideration for Plaintiffs to make the Loan and as collateral security for the prompt and complete payment and performance of Borrower as required by the Note, Borrower, Fund Guarantor and Guarantors (collectively "***Defendants***") executed a Guarantee and Collateral Agreement dated August 21, 2024 (the "***Guarantee***").

16.    Pursuant to the terms of the Guarantee, Defendants granted to Plaintiffs, continuing security interest in all of Defendants' right, title and interest in and to all personal property of such Defendant, including the followings (collectively, the "***Collateral***"):

---

[1] The Note is governed by the laws of the State of New York. Pursuant to NY CLS Gen Oblig § 5-501(6)(b) provides that loans or forbearances aggregating $2,500,000 or more are exempt from both civil and criminal usury laws.

3

a. All Inventory;

b. All general Intangibles, including all Intellectual Property;

c. All Accounts and Payment Intangibles;

d. All Chattel Paper, including Electronic Chattel Paper;

e. All Instruments and Documents;

f. All Goods, Equipment (including Vehicles) and Fixtures;

g. All Investment Property and all Investment Related Property;

h. All Commercial Tort Claims, including any set for on Schedule V;

i. All Letter of Credit Rights;

j. All Deposit Accounts, Securities Accounts and commodities Accounts, together with all funds and other property on deposit therein or represented thereby and funds otherwise on deposit with to under the control of the Collateral Agent or any Lender, any Affiliate or the Collateral Agent or any Lender or any of the Collateral Agent's or Lender's agents or correspondents acting on behalf of the Collateral Agent or the Lender and all other Money;

k. All Supporting Obligations;

l. All Special collateral;

m. all Collateral Records and Collateral Support,

n. without limiting the foregoing, in the case of any Fund Guarantor, (i) all of each Grantor's respective right, title and interest in and to the rights under the Constituent Documents (including, without limitation, the Partnership Agreement and each Subscription Agreement) and otherwise to (x) make Capital Calls for and to receive payments on account of Capital Commitments and any other rights to call for

4

additional Capital Contributions as contemplated by the relevant Constituent Documents, including the right to send Capital Call Notices to the Partners, and (y) enforce payment in full of the Capital Commitments and the related terms of each of the relevant Constituent Documents and each Subscription Agreement, and all rights in respect of Capital Calls against each Partner thereunder, in each case including all accessions and additions to, substitutions for and replacements, products and proceeds of any of the foregoing; (ii) the Capital Contributions, the Capital Commitments, the Capital Calls and the Unfunded Capital Call Amounts; (iii) all certificates, instruments and/or other documents evidencing the foregoing; and (iv) all renewals, replacements and substitutions of all of the foregoing;

o.  all parts, replacements, substitutions, profits, products, Accessions, cash and non-cash Proceeds of any of the foregoing (including, but not limited to, insurance Proceeds and Proceeds derived from any sale, lease, license or other disposition thereof) in any form and wherever located.

17.     The Guarantee further provided that each of the Guarantors unconditionally guaranteed, jointly and severally, as primary obligors and not merely as a surety, the due and punctual payment and performance of the obligations of Borrower under the Note.

18.     On or about February 10, 2025, the parties executed an amendment to the Not ("***Amendment***", referred together with the Note as the "***Amended Note***"). The Amendment pushed the maturity date of the Note to January 20, 202.

19.     Pursuant to Section 2.1 of the Guarantee, Defendants waived presentment and demand.

20.    Pursuant to Section 9.6(b) of the Guarantee, plaintiffs are entitled to attorney's fees in enforce their rights.

21.    Defendants failed to pay the Loan on or before the Maturity Date in accordance with the Amended Note and Guarantee.

22.    Pursuant to the terms of the Note, on January 20, 2025, the principal balance increased to $5,000,000 and the applicable premium payable was $2,500,000.

23.    Pursuant to the terms of the Note, on February 20, 2025, the principal balance increased to $6,000,000 and the applicable premium payable was $3,000,000.

24.    In addition, Defendants failure to pat the loan in full on or before the Maturity Date triggers a default interest rate of 9% per annum.

25.    Defendants finally paid the sum of $4,100,000 on or about March 7, 2025, representing the principal that was due and owing at that time.

26.    To date Defendants have failed and refused to pay the premium and default interest as agreed upon, leaving a balance in excess of $3,000,000 due an owing to Plaintiffs.

## FIRST CLAIM FOR RELIEF
(Breach of Contract Against Borrower)

27.    Plaintiffs hereby repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "26" of this complaint as if fully set forth therein.

28.    As set forth above, Borrower defaulted under the terms of the Amended Note.

29.    As a result of the Default, Plaintiffs demanded and are entitled to immediate payment in full of all sums due under the Amended Note.

30.    Plaintiffs have performed all of its obligations under the Amended Note.

31.    Pursuant to Section VIII(d) of the Amended Note, Plaintiffs are entitled to attorneys' cost and fees incurred in enforcing enforce their rights under the Note.

32.     There is due and owing to Plaintiffs, pursuant to the Note, the sum of $3,000,000, plus accrued and accruing default rate interest, contractual costs, attorneys 'fees and all other charges due to Plaintiffs under the Amended Note.

33.     Accordingly, Plaintiffs are entitled to a money judgment against Borrower in the amount of $3,000,000, plus accrued and accruing default rate interest, contractual costs, attorneys 'fees and all other charges due to Plaintiffs under the Amended Note.

## SECOND CLAIM FOR RELIEF
(Foreclosure of Security Interest Against Borrower and Fund Guarantors)

34.     Plaintiffs hereby repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "33" of this complaint as if fully set forth therein.

35.     To secure its interest in the Collateral of Borrower, and in order to notify others of Plaintiffs'' interest in and to the Collateral with regard to Borrower, Saponaro, as Collateral Agent, filed UCC-1 Financing Statement  with the Department of State of the State of Delaware on August 21, 2024, under Filing Number 20245762982.

36.     To secure its interest in the Collateral of GP, and in order to notify others of Plaintiffs'' interest in and to the Collateral, Saponaro, as Collateral Agent, filed UCC-1 Financing Statement with the Department of State of the State of Delaware on August 21, 2024, under Filing Number 20245763329.

37.     To secure its interest in the Collateral of Fund III, and in order to notify others of Plaintiffs'' interest in and to the Collateral, Saponaro, as Collateral Agent, filed UCC-1 Financing Statement  with the Department of State of the State of Delaware on August 21, 2024, under Filing Number 20245763204.

38.     As a result of the Defaults by Borrower under the Amended Note, Borrower also defaulted under the terms of the Guarantee, entitling Plaintiffs to, inter alia: (a) take possession of

the Collateral; (b) require Borrower to assemble the Collateral and make same available to Saponaro at a place designated by Plaintiffs; and/or (c) dispose of the Collateral by selling or leasing same, and apply the proceeds thereof to the obligations owed to Plaintiff.

39.     Accordingly, Saponaro as collateral agent, is entitled to judgment,  against Borrower and Fund Guarantors, foreclosing upon Plaintiffs' security interest in the Collateral, awarding to Saponaro, as collateral agent, immediate possession of the collateral, and permitting Saponaro to dispose of same and apply the proceeds thereof to the obligations and liabilities of Borrower in accordance with the Uniform Commercial Code.

## THIRD CLAIM FOR RELIEF
### (Conversion)

40.     Plaintiffs hereby repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "39" of this complaint as if fully set forth therein.

41.     Upon information and belief, Defendant shave continues to use the Collateral in their business despite the defaults, despite their obligations to return the Collateral, and despite their failure to make payment to the Plaintiffs therefor.

42.     As set forth above, the Defendants have (i) defaulted under the terms of the Amended Note and Guarantee; (ii) failed to make payment to the Plaintiffs of the full amount due and owing to the Bank under the Loan Documents; and (iii) intentionally refused, and wrongfully continues to refuse, to deliver possession of the Collateral to the Plaintiff in violation of the Plaintiffs' rights to possession of the Collateral.

43.     As a result of the failure of the Defendants to turn over the Collateral to the Plaintiffs' and their continued intentional, illegal usage and wrongful conversion of the Collateral, Plaintiffs have suffered damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
(Unjust Enrichment Against Borrower and Fund Guarantors)

44.    Plaintiffs hereby repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "43" of this complaint as if fully set forth therein.

45.    Upon information and belief, Borrower and Fund Guarantors have continued to use the Collateral in their business despite the defaults and their lack of any right to possess or use same.

46.    Upon information and belief, Borrower and Fund Guarantors have realized revenues from their illegal possession and use of the Collateral and have been unjustly enriched to the detriment of Plaintiffs: (i) in the amount of the value of the Collateral and (ii) any income Borrower and Fund Guarantors have realized or received due to their illegal possession of the Collateral.

47.    Accordingly, Plaintiffs are entitled to a money judgment against Borrower and Fund Guarantors in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
(Breach of Guarantees Against Guarantors)

48.    Plaintiffs hereby repeat, reiterate and reallege all of the allegations contained in paragraphs "1" through "47" of this complaint as if fully set forth therein.

49.    As set forth above, Borrower defaulted under the terms of the Amended Note.

50.    As a result of Borrower's defaults under the Amended Note, the Guarantors are liable to Plaintiffs for the Obligations due and owing pursuant to the Guarantee, but the Guarantors have failed to make payment to Plaintiffs of the full amount of the outstanding Obligations.

51.    Plaintiffs reasonably relied upon the Guarantee in advancing sums to Borrower pursuant to the terms of the Amended Note.

52.    Plaintiffs has performed all terms and conditions precedent on its part to be performed pursuant to the terms of the Guarantee.

53.    There is due and owing to Plaintiffs pursuant to the Guaranties the principal sum of $2,414,835.50 (as of April 8, 2021), plus accrued and accruing interest and default rate interest, late charges, prepayment fees, contractual costs, attorneys' fees and all other charges due to Plaintiffs.

54.    Accordingly, Plaintiffs is entitled to a money judgment, jointly and severally, against the Guarantors in the amount of $3,000,000, plus accrued and accruing default rate interest, contractual costs, attorneys 'fees and all other charges due to Plaintiffs under the Amended Note.

**WHEREFORE**, plaintiffs Joseph Saponaro and Gary Weksler respectfully demand judgment on each of their claims against defendants, CBCF II D, LLC, Cold Bore Capital Fund III, L.P., Cold Bore Capital GP III, LLC and Sergio Zepeda together with such other and further relief which this Court deems just and proper.

HINMAN, HOWARD & KATTELL, LLP

By: Joseph N. Paykin
    Partner